Frost, J.
dissenting. The copartnership of the defendants was proved before the acknowledgment by Finney was admitted in evidence — that fact was also admitted in the argument in this Court.
The case, then, presents the question, whether after the co-partnership of the defendants is proved by other evidence, the acknowledgment of one partner, after the dissolution of copartnership, that the plaintiff’s demand, which accrued during the partnership, was due and unpaid, is competent evidence to charge the other partner in a joint action against them.
In Geddes v. Simpson & Morrison the plaintiff produced a letter from one of the copartners, Simpson, acknowledging the receipt of an account current from the plaintiff, and that the balance was due to the plaintiff, as therein stated. To this evidence Morrison objected, that the letter was written after the dissolution, without his knowledge or consent. It was held by the whole Court, that the evidence was regular and proper. It was distinguished from a new contract made after the dissolution, as being only evidence of a contract made and due while the copartnership existed. Kendrick v, Campbell & Clarke was an action against the defendants as acceptors of a bill of exchange. The plaintiff offered in evidence a written admission by-Campbell, that the bill had been accepted by him, for the firm, in September, 1826 — but the admission being dated after the partnership was dissolved, it was objected that it was not competent evidence to. charge the other defendant, Clarke; and the objection was sustained. The plaintiff appealed. Some other points were discussed in the opinion of the Appeal Court, but a new trial was granted, expressly on the ground that the evidence had been improperly rejected.
The case of Geddes v. Simpson and Morrison is referred to, and said to have been followed in practice ever since.— The cases of Hackley v. Patrick and Walden v. Sherburne, are also referred to as having maintained that the admission of one partner, after the dissolution, was not admissible, even *224 jn relation to matters existing during the partnership. After (some comments, on these cases, Johnson, J. adds : “Upon considering the case in all its bearings, T am well satisfied that our own rule, and the rule of the English Courts, is better calculated to promote the ends of justice, and to preserve the analogies of the law and it was adjudged that the admission of Campbell, having relation to facts existing during the co-partnership, although made after the dissolution, was admis-s'°le- Li Allen and Montgomery v. Owens and others, the ’plaintiffs sued, by summary process, the defendants, as partners, for the balance due on a sale of cigars. Owens was served with interrogatories to prove the plaintiffs’s demand. He was willing to give testimony, either as a party or as a witness. The other defendants objected to his testimony.— The Circuit Judge received his answers to the inlerrogataries. He said that he and the other defendants were copartners ; that during the partnership he bought the cigars ; and that they were for the concern. The other defendants offered in evidence the articles of copartnership, and proved the execution of the deed by Owens. The partnership was dissolved several years before Owens was examined. In the books of the plaintiffs, the cigars were charged to Owens, and they took his note in payment. He had paid it in part, and the action was for the balance due on the sale. O’Neall, J. delivers the opinion of the Court. He admits that Owens’s answers to the interrogatories, to which he was subject as a defendant in the summary process jurisdiction, would not have given the plaintiffs a decree; but adds, the defendants examined him generally, and thereby made him their witness; and concludes that “if he is considered as a witness, then he proved every thing necessary to charge the other defendants.” If the defendants had examined Owens without objection, they could not afterwards except to his testimony having been received. But it is stated in the report, that they did object to his testifying. If, then, the decree could be sustained, it must have been on the other ground on which it was rested, viz: that “if Owens was not a witness after the defendants showed the articles of partnership, and thus proved that they were partners, Owens’s declaration that the articles were purchased for the firm, could make them all liable.” The judgment of the Court was mainly supported on this ground. For it will be noticed that it is only affirmed in the opinion, that “ if Owens was a good witness,” then he proved the case. In support of the competency of Owens’s declarations, the case of Kendrick v. Campbell and Clarke is cited, and Montague on Partnership to the same effect.— This case was decided in 1843, and the whole. Court concurred. The case of Chardon v. Oliphant, Calder & Co. is at variance with these cases, and does affirm, but vaguely *225 and in confusion with another ground for a new trial, that the admissions of one partner, after dissolution, do not bindi others. Geddes v. Simpson and Morrison was overlooked; and the authority of the decision rests entirely on the die-turn of the Judge, who does not advert to a single case. But it remained for many years in manuscript obscurity, and did not disturb the course of practice, nor did a dictum of Bay, J. to the same effect, in White v. Union Insurance Company, which was made arguendo, in a case which did not involve the question. The case is not to be found cited in our reports as an authority for the position, and Bay, Justice, overlooked his own deliberate judgment in Geddes v. Morrison.
Even if the case and dictum were entitled to more weight than they are, yet they must be .considered to have been overruled by the subsequent and well considered decisions in Bailey and Spears. In the case of the Executor of Fisher v. The Executor of Tucker, Judge Nott, after referring to some of the cases on the subject, and the diversity of opinion they manilest, declares the admissions of a partner, after dissolution, to be unquestionably sufficient to save a case from the operation of the statute of limitations, and in his opinion, admissible as to the existence of the debt, though not conclusive.
Since the leading case of Wood v. Braddick, the rule is well established in the English Courts. In that case Lord Mansfield says, “ clearly the admission of one partner, made after the partnership has ceased, is not evidence to charge the other in any transaction which has occurred since this separation ; but the power of partners with respect to rights created pending the partnership, remains after the dissolution.— Since it is clear that one partner can bind the other during all the partnership, on what principle is it that, from the moment when it is dissolved, his account of their joint contracts should cease to be evidence? and that those who are to-day as one person in interest, should to-morrow become entirely distinct in interest with regard to past transactions, which occurred while they were so united ?” Heath, J. says, “ is it not a very clear proposition, that when a paitnership is dissolved it is not dissolved with regard to things past, but only with regard to things future. With regard to things past, the partnership continues and always must continue.” In Hadenpyt v. Vingerhoct and another, Abbot, O. J. received the admission of one of the partners, after dissolution, that a note was subscribed by him, in the name of the firm, as sufficient evidence to support the action against both defendants. Lacy v. McNeil and Prichard v. Draper may also be cited, to show that Wood v. Braddick is recognized in the most recent decisions.
Why should a rule of evidence which is established by *226 the deliberate judgment of our own Courts, and has prevail-e(j for near paif a century, supported, as it is, too, by the impressive authority of the English cases, be now reversed ?— Every such innovation is a discredit to the law, by the uncertainty it begets, and detracts respect and authority from the judgments of the Court. A change can be justified only by urgent necessity. It should be shown that the abrogated rule is mischeivous in practice, and disturbs the course of justice. It is a very insufficient reason for reversing the judgments of this Court, that in some one or more of the States of the Confederacy, a contrary decision has been made. The force of the objection to a reversal of a settled rule of law is increased when, as in this case, the innovation is attempted by a divided Court, and the result can only be to set the question afloat.
The cases of Hackley v. Patrick and Walden v. Sherburn, established the rule which has ever since been observed in the Courts of New York, that one partner cannot, after dissolution, bind his copartner by acknowledging an account, any more than he can give a promissory note to bind him.— It is acknowledged by the Court in these cases, that they are in conflict with Wood and Braddick ; but they are said to introduce a safer rule. Professor Story, in his Treatise on Partnership, declares his approbation of the New York cases, while he admits that, in America, no small diversity of opinion has been expressed on the subject. He states the-whole ground of controversy to be, whether the acknowledgment is a mere continuation of the original promise, or whether it is a new contract or promise, springing out of and supported by the original consideration.
In the diversity of decisions, the cases in our own Court are not without support. Cady v. Shepherd was an action against Shepherd & Robbins as copartners. The contract was under seal, and signed by Shepherd in the absence of Robbins. The plaintiff offered parol evidence, to show a previous assent or ratification by Robbins — this was the first issue. To prove some of the issues relating to the performance of the contract, the plaintiff offered the written declarations of Shepherd, made after the dissolution of the partnership. Wilde, J. delivered the opinion of the Court. In answer to the objections against Shepherd’s declarations, the rule in Wood v. Braddick, which is quoted, is adjudged to have been correctly laid down, and said to have been frequently recognized with unqualified approbation, (citing Lacy v. McNeil and Gow on Partnership, which have been referred to in this dissent,) and is the settled law of England at the present, day, notwithstanding contradictory opinions which have prevailed in relation to the admissions of a partner as to debts barred by the statute of limitations. He ex *227 presses the opinion that, but for these conflicting opinions, Wood v. Braddick would not have been questioned ; and ( denies that they affect the rule in Wood v. Braddick in relation to outstanding, subsisting demands against partners, which are not barred by the statute of limitations; which rule is affirmed to be the law of the commonwealth, established by a series of judicial decisions. The contrary doctrine, maintained by Spencer, J. in Walden v. Sherburn, is controverted ; and against Spencer’s opinion he opposes the case of Wood v. Braddick and affirms that it establishes the safer rule. With respect to contracts made during the continuance of the partnership, he assumes that it is immaterial whether the confessions of any one of the partners were made before or after the dissolution. The opinion is thus concluded : “But that the confessions of any one of the defendants, in an action against several, may be given in evidence against them, the joint contract being first proved aliunde, cannot be reasonably doubted.”
In Martin v. Root, Parker, C. J. says that the objection made to the admission offered, that it was made after the dissolution, could not prevail, because it was a confession of facts which took place before the dissolution ; and it may be doubted whether the joint interest is dissolved until the note was paid. Vinal v. Burrell and Bridge v. Gray are concurrent authorities wi'h Cady v. Shepherd. If, when it is said in Cady v. Shepherd that the declaration of one partner, after dissolution, respecting a partnership liability, may be evidence to charge the others, “ the joint contract being first proved aliunde,” it be intended to affirm any more than that the copartnership must be proved by other evidence than the admission of one of the partners, and be understood to qualify the rule so as to admit such declarations only after the plaintiff has first proved the copartnership, and the contract to which the admissions apply; it is clear that the reasoning is much larger than the conclusion, and breaks through the limitation which it is attempted to impose. In Wood v. Braddick, which is affirmed throughout the case, it was decided that the mutual agency of partners, respecting transactions which occurred during the partnership, continues after dissolution, the same as before dissolution ; and that, in effect, a partnership is not dissolved, as to copartnership affairs, until they are closed. Now, in all the diversity of decisions in America, it has not been ever held that, one partner cannot be bound by the admissions of another, made during the partnership, respecting a liability of the firm, unless the contract, the subject of the admission, be first proved aliunde.
Besides, reason is at fault in the practical application of the limitation. The partnership must, of course, be proved by other evidence than that of the copartner. The partnership *228 proved, a mutual general agency of the.several partners, in the copartnership affairs, is created. The declarations of one * partner cannot be received to exonerate the partners, but can only be evidence for. the plaintiff to charge them. Practically, of what account is the admission of a partner to superadd evidence of the defendants’s liability for a contiact already proved? What sensihlé distinction can be taken between the particular facts admitted, when they do, all, in the same manner,.tend to charge the defendants with'liability ? What difference can it make, whether the defendants aie charged by the admission of the fact and existence 'of the contract on which the plaintiff sued; or by the admission,, that it still subsists ; or -has never been performed .by th.e defendants, in case they are charged with non-performance of it; or that the plaintiff has performed his part of.the contract, if the lia- ■ bility of the defendants depends oh that issue? The competency of evidence to establish the plaintiff’s demands, cannot be made to depend on the previous production of other evidence to prove the same 'demand. The omy proper question for decision must be whether, after'dissolution,. the-admissions of one partner can be received to charge the otheis in a transaction which occurred before they separated. If such admissions are competent,-th'ere is no sanction in the • rules of evidence,.nor in the nature of one partners agency, after dissolution, for holding that he may charge the ot tiers by the admission of certain facts, but shall not charge them by the admission of other facts, when the admission, in either case' is offered to support the same issue, and -relates to the same liability. -
The restriction on .the competency of o.ne' partner’s admissions, after dissolution, to charge, the others, which requires that the joint contract should be first proved'aliunde, proceeds on a supposed conformity to the law which declares that, after dissolution^ one partner cannot create a' new -debt or liability which shall bind the others. This law cannot be denied; but it is misapplied when called in aid of the restiiction in question. It is assumed that if proof be made of the contract or of its existence by the admission of one of the partners, such admission creates a new liability ; but if the contract be proved aliunde, and' the liability of the defendants depends'on' the performance of the contract, proof of this issue, by the admission of one of the partners, after dissolution, that the plaintiff has performed his part, or that the defendants have not performed'their part, creates no new liability. This is a man fest confusion of ideas. The contract, with the liabilities it imposes on the contracting parties, is one thing, and the proof of the contract is another thing. Proof of the contract, by the admission of one of the partners, no more creates a new liability than proof of the same contract by *229 any other witness. 1 do not now speak of admissions of one partner, offered to take a case out of the statute of limitations ; but of such as are offered to establish the plaintiff’s cause action, when no such defence is interposed. The testimony of a witness, and the admissions of a partner, respecting the making of a contract, or any other fact which occurred before the plaintiff brought his action, whereby to charge the defendants with liability, are, in effect, precisely the same. They are evidence only of an act done, or of a default. The liability must depend on the act or default, and is referred to the time when it was done or omitted to be done. The partner no more exerts an agency in making the contract or creating the liability sued upon, when it is proved by his admissions, than a witness exerts such agency who may give corresponding testimony.
It is justly remarked by Shaw, C. J. in Cady v. Shepherd, that confusion has been introduced on this subject by the conflicting opinions which have prevailed in relation to the admissions of a partner as to debts barred by the statute of limitations. If the Courts in America were not distracted by the multifarious and conflicting decisions in the numerous Courts of the States, the rule in Wood v. Braddick would have prevailed in this country, with the same invariable consistency as it has governed the English Courts; and unless thejeports in other States be referred to only for instruction, and cease to be regarded as authority, the law must ever be as variable as the wind which fitfuly blows from them all.
On no subject has greater confusion and inconsistency prevailed in judicial opinions, than respecting the admissibility and effect of acknowledgments to take a case out of the statute of limitations. Until the case of Bell v. Morrison, the leading distinction between admissions of a debt, after and before it was barred, was imperfectly apprehended. That distinction, on the authority of Bell v. Morrison, was introduced into our Courts by the case of Young v. Monpoey.— It establishes that to except a case from the operation of the statute, when the debt is already barred, a new promise is necessary, either express, or implied from an unqualified admission of the debt. In such case, the admission by one partner cannot be received to charge the others, since the effect of it would bo to renew the obligation of a debt already extinct, and thereby create a new liability. There yet remains great diversity of opinion respecting the effect of an admission of a debt before the statutory bar is complete ; whether it operates to continue the existence of a subsisting liability, or as a new promise. In all our cases it is assumed that such admission operates to continue the original liability, and not to create a new one. In Bell v. Morrison, Judge Story maintains that such admission must operate as a new *230 promise, in the same manner as if the admission were made after statute had run out; and that, therefore, if made by one partner, it shall not bind the others. Wherever it is held th.at admission of a debt, before it is barred, must operate as a new promise, it is consistent with that rule to exclude the admissions of one partner against the others, when produced to remove the bar of the statute. But the judgment of the Court, in this case, goes further, and unless the joint contract be proved by evidence aliunde, rejects the admissions of a partner, after dissolution,'as evidence against his copartner, though not introduced as evidence of a new promisé to prevent the operation of the statute of limitations, but only to establish the plaintiff’s demand. While Judge Story, in Bell v. Morrison, declares his approbation, of the rule in Hackley v. Patrick, that after dissolution of the partnership, the power of one partner to.bind the others wholly ceases, and that his acknowledgment of an account should' not bind his co-partners, any moi;é than his giving a n'ote in the name of the firm, yet. he repudiates the doctrine that on antecedent proof of the partnership contract, the admissions of one partner, after dissolution, should be received to take a case out of the statute of limitations, so as to charge the others. He asks, “if the acknowledgment does not establish-the existence of the debt against the partnership, why should it be admitted at all V At the close of his learned argument he is constrained to admit that the case of Wood v. Braddick stands upon a clear if it be not a legal ground, that as to. things past, the partnership continues and always must continue, notwithstanding the dissolution. Thus the authority of Judge Story, if it be invoked for the abrogation of our own and the English law, is equally opposed to the condition of previous proof aliunde of the joint contract, before the admissions of one.partner, after dissolution, can be received in evidence to charge his copartners. It may be argued, as it has been by those who reject the doctrine in Wood v. Braddick, that it is •the safer rule to exclude the admissions of one partner, after dissolution, .to charge his copartner, since they may be used, for purposes of fraud. The case of a solvent partner, charged by such admissions.with a- debt not due, is presented as a fearful grievance. After dissolution of a partnership, how often does it happen that such is the respective conditions of the partners'? The caution which-dictates the rule assumes that honesty is the exception in the general character of mankind. Is it not as probable that the solvent partner is dishonest ; and may not justice be as much concerned’to charge him with,a debt which he would evade, as to protect him against an unjust demand ? Besides, it must be noticed that the insolvent partner, by his admission of a copartnership demand against the solvent partner, becomes . liable for at *231 least half of the claim, and by its recovery he makes himself debtor to the solvent partner, whose resentment he has pro-voiced by injury. It isa microscopic vigilance which guards the solvent partner against the fraud of the insolvent partner, by rejecting his admission of a partnership debt, and yet leaves to the insolvent partner the ample powers which remain to him over the partnership affairs. Each of the partners, after dissolution, has a right to the custody of the partnership goods and effects, and to the application of them to any of the purposes of the partnership; each may collect and receive debts due to the firm, and give a good discharge or release; each would have the power to bind the partnership by payments of a joint debt, out of the partnership funds ; which implies the power of judging and determining upon the question of the existence and non-payment of such debts. With the opportunities for fraud which such ample powers confer, an insolvent partner can have little motive and very seldom occasion to resort to fraudulent admissions of a co-partnership debt, for the purpose of inflicting injury on his former associate.
Evans, J. concurred.

Motion granted.